UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

BENJAMIN MARK NYGAARD,

                Plaintiff,

v.                                                   Case No. 21-cv-901-pp

PAUL NEYHARD, KEVIN A. CARR,
ANDREW RUSSELL, HEIDI DORNER,
C. GEESAMAN, JENNIFER VANDE VOORT,
TODD GILLINGHAM, LT. NIKKI SCHWEBKE,
R. BUBOLZ, EMIL TONEY, JAMES ZANON,
CATHY JESS, M. MEISNER, SARAH COOPER,
E. DAVIDSON, BRAD HOMPE, M. GREENWOOD,
CHRIS O'DONNELL, WISCONSIN DEPARTMENT OF CORRECTIONS
and OSHKOSH CORRECTIONAL INSTITUTION,

                Defendants.

---

**ORDER SCREENING COMPLAINT UNDER 28 U.S.C. §1915A AND DENYING PLAINTIFF'S MOTION FOR ORDER TO SHOW CAUSE AND FOR SCHEDULING ORDER (DKT.NO. 6)**

---

      Benjamin Mark Nygaard, who is confined at the Oshkosh Correctional Institution ("Oshkosh") and who is representing himself, filed a complaint under 42 U.S.C. §1983, alleging that the defendants violated his civil rights. Dkt. No. 1. The plaintiff has paid the full filing fee. This decision screens his complaint, dkt. no. 1, and addresses his motion for an order to show cause and for a scheduling order, dkt. no. 6.

**I.    Screening the Complaint**

    A.    <u>Federal Screening Standard</u>

      Under the Prison Litigation Reform Act, the court must screen complaints brought by incarcerated persons seeking relief from a governmental

1

entity or officer or employee of a governmental entity. 28 U.S.C. §1915A(a). The court must dismiss a complaint if the plaintiff raises claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. §1915A(b).

In determining whether the complaint states a claim, the court applies the same standard that it applies when considering whether to dismiss a case under Federal Rule of Civil Procedure 12(b)(6). See Cesal v. Moats, 851 F.3d 714, 720 (7th Cir. 2017) (citing Booker-El v. Superintendent, Ind. State Prison, 668 F.3d 896, 899 (7th Cir. 2012)). To state a claim, a complaint must include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The complaint must contain enough facts, accepted as true, to "state a claim for relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows a court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (citing Twombly, 550 U.S. at 556).

To state a claim for relief under 42 U.S.C. §1983, a plaintiff must allege that someone deprived him of a right secured by the Constitution or the laws of the United States, and that whoever deprived him of this right was acting under the color of state law. D.S. v. E. Porter Cty. Sch. Corp., 799 F.3d 793, 798 (7th Cir. 2015) (citing Buchanan–Moore v. Cty. of Milwaukee, 570 F.3d

2

824, 827 (7th Cir. 2009)). The court construes liberally complaints filed by plaintiffs who are representing themselves and holds such complaints to a less stringent standard than pleadings drafted by lawyers. Cesal, 851 F.3d at 720 (citing Perez v. Fenoglio, 792 F.3d 768, 776 (7th Cir. 2015)).

B. The Plaintiff's Allegations

The plaintiff alleges that on April 11, 2018, Oshkosh entered a Memorandum of Understanding ("MOU") with the University of Wisconsin-Platteville, "per policy DAI 309.55.05."[1] Dkt. No. 1 at 3. He says that on that same day, he filled out a form DOC-1117 (2017 version) for approval to enroll in the Bachelor of Science in Business Administration program at UW-Platteville, per policy DAI 309.00.26. Id. The next day, Oshkosh allegedly approved the plaintiff's form for enrollment. Id. He states that he is using his Veterans Affairs "Post 9/11 G.I. Bill" Education Benefits to cover the full costs of his classes. Id.

The plaintiff alleges that on May 2, 2019, he enrolled in five classes for a twelve-month term ending May 1, 2020. Id. He says that he had to drop a class after defendant Heidi Dorner, who is the education director, denied him access to the computer lab to complete the required course work. Id. In August 2019, Dorner and defendant Paul Neyhard, who is the test proctor, allegedly forced the plaintiff to sign new DOC-1117 (2019 version) approval forms for each of

---

[1] The plaintiff references DAI policies in his complaint and the court presumes he is referring to Wisconsin Department of Corrections Division of Adult Institutions policies. The plaintiff has not included the text of these policies along with his complaint.

his remaining four classes. Id. He alleges that Dorner and defendant Warden Cathy Jess told him that Oshkosh had changed its definition of "course" and was retroactively enforcing its new "policy" by requiring him to re-apply for approval to enroll in classes for which he had previously enrolled. Id. at 3-4.

The plaintiff alleges that in May 2020, he enrolled in four classes from UW-Platteville using the original 2017 DOC-1117 form. Id. at 4. He says that in July 2020, he informed Neyhard that he had sent for his first exam from UW-Platteville and that Neyhard would need to proctor the exam. Id. The plaintiff says that Neyhard subsequently told the plaintiff that he would not proctor the exams unless the plaintiff received approval from Dorner. Id. According to the plaintiff, he had received approval in April 2018. Id.

The plaintiff alleges that he filed an inmate complaint against Neyhard and Dorner, and that Neyard issued him a conduct report (111743) in retaliation for filing the complaint. Id. The plaintiff states that the institution complaint examiner used the conduct report to negate the initial complaint he filed, and that he appealed the conduct report to the warden. Id. The plaintiff alleges that he filed another inmate complaint for the retaliatory conduct report, but defendant Bubolz, who is the institution complaint examiner, dismissed the complaint because the conduct report appeal process had not completed. Id. Defendant Deputy Warden James Zanon subsequently upheld the conduct report and dismissed the complaint. Id. The plaintiff alleges that he appealed the dismissal of his inmate complaint to defendant Brad Hompe (the corrections complaint examiner) and the Office of the Secretary, both of

4

whom dismissed the complaint. Id. The plaintiff alleges that he filed a third inmate complaint for the conduct report itself and that defendants Todd Gillingham (the institution complaint examiner), Jess (the reviewing authority), Hompe, and Chris O'Donnell (Office of the Secretary) all dismissed the complaint, citing the conduct report. Id.

The plaintiff alleges that in December 2020, defendant Andrew Russell took over as exam proctor from Neyhard. Id. The plaintiff says that he informed Russell that he had incoming exams from UW-Platteville that needed to be proctored and Russell ordered the plaintiff to fill out a new approval form for the classes in which he had been enrolled since May 2020. Id. According to the plaintiff, he complied with Russell's order, but Dorner denied the new forms stating they were incorrectly filled out. Id. The plaintiff alleges that "[a]s a result of this," Russell issued him a major conduct report (144465) for which the plaintiff received sixty days' segregation time. Id. At the hearing, the plaintiff's legal paperwork was allegedly withheld from him and defendants Emil Toney, Nikki Schwebke, Jennifer Vande Voort and C. Geesaman did not allow him to submit evidence, in violation of DOC policy. Id. The plaintiff alleges that he appealed the conduct report and defendant Zanon upheld the conduct report in its entirety. Id. The plaintiff says he filed a complaint (OSCI-2021-2500), but that Gillingham and O'Donnell and defendants Meisner and Davidson dismissed it. Id.

The plaintiff contends that Oshkosh and the DOC violated his "ex post facto" constitutional rights because the DOC-1117 (2017) is a legal document

5

used to enroll him in classes at UW-Platteville, but Oshkosh changed the interpretation of the policy and the definition of "course" after the fact and is punishing him for using the DOC-1117 (2017) in April 2018. Id. at 5. The plaintiff claims that Oshkosh and the DOC violated: (1) his right to free speech because they are limiting his right to take post-secondary classes at his own expense by the use of force (60 days segregation); (2) his right to be free from double jeopardy because Conduct Reports 111741 and 144465 punish him for taking the same classes within the same term of enrollment at UW-Platteville; (3) his right to be free from cruel and unusual punishment for being placed in segregation for taking approved college classes; and (4) his right to due process, as defined in DOC 303 because he was not allowed to submit evidence for consideration, question witnesses or see the evidence presented against him during his hearing on Conduct Report 144465. Id.

The plaintiff seeks injunctive relief and monetary damages.

C. Analysis

The plaintiff has sued the Wisconsin Department of Corrections and Oshkosh Correctional Institution. The plaintiff may not proceed against the Department of Corrections because it entitled to sovereign immunity and is immune from suit. See Mayhugh v. State, 364 Wis. 2d 208, 224 (2015). "[S]tates and their agencies are not 'persons' subject to suit under 42 U.S.C. § 1983." Johnson v. Supreme Court of Ill., 165 F.3d 1140, 1141 (7th Cir. 1999). This means that "[n]either the State of Wisconsin nor the State's Department of Corrections is a proper defendant." Andreola v. Wisconsin, 171

F. App'x 514, 515 (7th Cir. 2006). Oshkosh Correctional Institution is one of several institutions within the Department of Corrections. Because they are not "persons" subject to suit under §1983, the court will dismiss the Wisconsin Department of Corrections and Oshkosh Correctional Institution as defendants.

The plaintiff claims that the defendants have violated his right to take college level courses at UW-Platteville. While the court commends the plaintiff's efforts to take advantage of the opportunity to further his education while incarcerated, he has no constitutional right to that education. Garza v. Miller, 688 F.2d 480, 486 (7th Cir. 1982). Incarcerated persons have neither a liberty nor a property interest in educational programs. Id. (citing Higgason v. Farley, 83 F.3d 807, 809-10 (7th Cir. 1995) (denying a prisoner the opportunity to earn credit time by taking educational courses states no claim upon which relief can be granted in a §1983 action)). The mere offering of education programs does not create a liberty interest in those programs because the removal of those programs would not "impose atypical and significant hardship on a prisoner in relation to ordinary prison life," and therefore would not violate the Due Process Clause of the Fourteenth Amendment. Martinoski v. Wis. Dep't of Corrs., 896 F. Supp. 882, 884 (E.D. Wis. 1995). In addition, the Eighth Amendment does not compel a prison administrator to provide general educational programs for incarcerated persons and it follows that refusing to take steps to help an incarcerated person use available programs does not

violate the Eighth Amendment. See Johnson v. Randle, 451 F. App'x 597, 599 (7th Cir. 2011) (citations omitted).

Based on the well-established case law explaining that incarcerated persons have no constitutional right to educational programs, the plaintiff has not stated a claim based on his allegations that he was forced to drop a class in which he had previously enrolled, that institution staff forced him to reenroll for classes using an updated form or that he need to get approval from the education director before taking an exam. Even if the defendants violated prison rules, regulations or policies, that would not necessarily state a violation of the plaintiff's constitutional rights because failure to follow state administrative procedures or state law does not necessarily give rise to a constitutional violation. Fuller v. Dillon, 236 F.3d 876, 880 (7th Cir. 2001); Kompare v. Stein, 801 F.2d 883, 888 (7th Cir. 1986) (mere fact that the conduct in question violates DOC regulations does not form the basis of §1983 liability); see also Owens v. Funk, 760 F. App'x 439, 443 (7th Cir. 2019) (violation of prison rules does not, without more, offend the Constitution).

The plaintiff alleges that Neyhard issued him a conduct report (111743) in retaliation for an inmate complaint he filed against Neyhard and Dorner after Neyhard told him in May 2020 that he would not proctor his exams unless the plaintiff received approval from Dorner. Prison officials may not retaliate against incarcerated persons for engaging in activities protected by the First Amendment. Bridges v. Gilbert, 557 F.3d 541, 546 (7th Cir. 2009). A prison official violates an incarcerated person's First Amendment rights when:

(1) the incarcerated person engages in a protected activity not inconsistent with legitimate penological interests; (2) the official inflicts a deprivation likely to deter protected activity; and (3) the incarcerated person's protected activity was at least a factor motivating the deprivation. Id. at 546, 551 (citing Turner v. Safley, 482 U.S. 78, 89 (1987)). The plaintiff may proceed on his retaliation claim against Neyhard based on the alleged retaliatory conduct report.

The plaintiff also alleges that defendant Russell issued him a conduct report. The plaintiff has not alleged, however, that Russell issued the conduct report in retaliation for any First Amendment protected activity and, therefore, he has not stated a retaliation claim against Russell regarding the conduct report. The plaintiff also alleges that he could not present evidence at the disciplinary hearing on the conduct report and that he was sentenced to 60 days' segregation on the conduct report. These allegations do not state a due process claim because he has not alleged that he was deprived of a liberty interest. See Marion v. Columbia Corr. Inst., 559 F.3d 693, 697-98 (7th Cir. 2009) (citing Whitford v. Boglino, 63 F.3d 527, 533 (7th Cir. 1995) (six months of segregation is not such an extreme term and, standing alone, would not trigger due process rights). The plaintiff may not proceed on a claim based on the conduct report Russell issued him or the disciplinary hearing from the conduct report.

The plaintiff also has sued the defendants based on their decisions related to the inmate complaints he filed. These allegations do not state a claim. "Ruling against a prisoner on an administrative complaint does not

9

cause or contribute to the violation. A guard who stands and watches while another guard beats a prisoner violates the Constitution; a guard who rejects an administrative complaint about a completed act of misconduct does not." George v. Smith, 507 F.3d 605, 609-10 (7th Cir. 2007); see also Owens v. Hinsley, 635 F.3d 950, 953-54 (7th Cir. 2011) (alleged mishandling of state inmate's grievances by persons who otherwise did not cause or participate in the underlying conduct did not state claim under First Amendment or Due Process Clause).

In sum, the plaintiff may proceed on a retaliation claim against Paul Neyhard based on his allegations that Neyhard issued him a conduct report (111743) in retaliation for an inmate complaint he filed against Neyhard and Dorner. The court will dismiss the remaining claims and defendants.

## II.     Plaintiff's Motion for Order to Show Cause (Dkt. No. 6)

The plaintiff has filed a motion asking the court to issue an order to show cause to order the defendants to appear in court and explain why they have not responded to the complaint. Dkt. No. 6. The plaintiff also asks the court to issue a scheduling order. Id. The defendant does not need to answer the complaint until the court has screened it and ordered service on the defendant. This order screens the complaint under 28 U.S.C. §1915A, orders service on the defendant and directs the defendant to respond to the complaint. Once the defendant has answered the complaint, the court will issue a scheduling order setting deadlines for the completion of discovery and filing dispositive motions. The court will deny the plaintiff's motion for an order to show cause.

10

### III. Conclusion

The court **ORDERS** that defendants Carr, Russell, Dorner, Geesaman, Vande Voort, Gillingham, Schwebke, Bubolz, Toney, Zanon, Jess, Meisner, Cooper, Davidson, Hompe, Greenwood, O'Donnell, Wisconsin Department of Corrections and Oshkosh Correctional Institution are **DISMISSED**.

The court **DENIES** the plaintiff's motion for order to show cause. Dkt. No. 6.

Under an informal service agreement between the Wisconsin Department of Justice and this court, the court will electronically transmit a copy of the complaint and this order to the Wisconsin Department of Justice for service on defendant Paul Neyhard. The court **ORDERS** that defendant Paul Neyhard file a responsive pleading to the complaint within 60 days.

The court **ORDERS** that the parties may not begin discovery until after the court enters a scheduling order setting deadlines for completing discovery and filing dispositive motions.

The court **ORDERS** that plaintiffs who are incarcerated at Prisoner E-Filing Program institutions[2] must submit all correspondence and case filings to institution staff, who will scan and e-mail documents to the court. Plaintiffs who are incarcerated at all other prison facilities must submit the original document for each filing to the court to the following address:

---

[2] The Prisoner E-Filing Program is mandatory for all persons incarcerated at Green Bay Correctional Institution, Waupun Correctional Institution, Dodge Correctional Institution, Wisconsin Secure Program Facility, Columbia Correctional Institution, and Oshkosh Correctional Institution.

Office of the Clerk
United States District Court
Eastern District of Wisconsin
362 United States Courthouse
517 E. Wisconsin Avenue
Milwaukee, Wisconsin 53202

THE PLAINTIFF MUST NOT MAIL ANYTHING DIRECTLY TO THE JUDGE'S CHAMBERS. It will only delay the processing of the case.

The court advises the plaintiff that if he fails to file documents or take other required actions by the deadlines the court sets, the court may dismiss the case based on his failure to diligently pursue it. The parties must notify the clerk of court of any change of address. The court advises the plaintiff that it is his responsibility to promptly notify the court if he is released from custody or transferred to a different institution. The plaintiff's failure to keep the court advised of his address may result in the court dismissing this case without further notice.

The court will include a guide prepared by court staff to address common questions that arise in cases filed by incarcerated persons. Entitled "Answers to Prisoner Litigants' Common Questions," this guide contains information that the plaintiff may find useful in prosecuting his case.

Dated in Milwaukee, Wisconsin, this 31st day of May, 2022.

BY THE COURT:

_____
**HON. PAMELA PEPPER**
**Chief United States District Judge**