UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

BENJAMIN MARK NYGAARD,

      Plaintiff,

v.              Case No. 21-cv-901-pp

PAUL NEYHARD,

      Defendant.

## ORDER DENYING AS MOOT PLAINTIFF'S MOTION FOR LEAVE TO FILE AMENDED COMPLAINT (DKT. NO. 13)

  Benjamin Mark Nygaard, who is incarcerated at Stanley Correctional Institution and is representing himself, filed a complaint under 42 U.S.C. §1983 against twenty defendants, alleging that they violated his constitutional rights stemming from his enrollment in correspondence classes at the University of Wisconsin-Platteville when he was incarcerated at Oshkosh Correctional Institution. Dkt. No. 1. The court screened the complaint and allowed the plaintiff to proceed on a claim against Paul Neyhard based on allegations that Neyhard issued him a conduct report (#111743) in retaliation for a grievance the plaintiff filed against Neyhard and Heidi Dorner. Dkt. No. 8 at 8-9, 10. At screening, the court did not allow the plaintiff to proceed on any other claims and it dismissed the nineteen other defendants. Id. at 11. The plaintiff has filed a motion to amend the complaint, stating that that court may have misunderstood the questions he asks the court to resolve, particularly the question of "property rights" and the application of "liability rules." Dkt. No. 13.

1

Case 2:21-cv-00901-PP Filed 03/07/23 Page 1 of 11 Document 21

Along with the motion to amend, the plaintiff filed an amended complaint. Dkt. No. 13-1.

A party may amend its pleading once as a matter of course within twenty-one days after service of a responsive pleading. Federal Rule of Civil Procedure 15(a)(1). The defendant filed his answer to the original complaint on July 29, 2022. Dkt. No. 11. The court received the plaintiff's motion to amend and his amended complaint seventeen days later, on August 15, 2022. Dkt. Nos. 13, 13-1. Because the plaintiff filed his amended complaint less than twenty-one days after the defendant answered the original complaint, he did not need leave of the court to amend the complaint. The court will deny as moot the plaintiff's motion to amend and will direct the Clerk of Court to docket the proposed amended complaint as the amended complaint.

As explained in this order, the amended complaint sues the same defendants and contains the same allegations as the original complaint. The plaintiff has not argued that the court's screening order contains any legal or factual errors. This order reviews the amended complaint under 28 U.S.C. §1915A, reviews the court's order screening the original complaint and, where appropriate, addresses the questions raised in the plaintiff's motion to amend and amended complaint.

**I.  Screening the Amended Complaint**

    A.  <u>Federal Screening Standard</u>

Under the Prison Litigation Reform Act, the court must screen complaints brought by incarcerated persons seeking relief from a governmental

entity or officer or employee of a governmental entity. 28 U.S.C. §1915A(a). The court must dismiss a complaint if the incarcerated plaintiff raises claims that are legally "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. 28 U.S.C. §1915A(b).

In determining whether the complaint states a claim, the court applies the same standard that it applies when considering whether to dismiss a case under Federal Rule of Civil Procedure 12(b)(6). See Cesal v. Moats, 851 F.3d 714, 720 (7th Cir. 2017) (citing Booker-El v. Superintendent, Ind. State Prison, 668 F.3d 896, 899 (7th Cir. 2012)). To state a claim, a complaint must include "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The complaint must contain enough facts, accepted as true, to "state a claim for relief that is plausible on its face." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows a court to draw the reasonable inference that the defendant is liable for the misconduct alleged." Id. (citing Twombly, 550 U.S. at 556).

To state a claim for relief under 42 U.S.C. §1983, a plaintiff must allege that someone deprived him of a right secured by the Constitution or the laws of the United States, and that whoever deprived him of this right was acting under the color of state law. D.S. v. E. Porter Cty. Sch. Corp., 799 F.3d 793, 798 (7th Cir. 2015) (citing Buchanan–Moore v. Cty. of Milwaukee, 570 F.3d

3

824, 827 (7th Cir. 2009)). The court construes liberally complaints filed by plaintiffs who are representing themselves and holds such complaints to a less stringent standard than pleadings drafted by lawyers. Cesal, 851 F.3d at 720 (citing Perez v. Fenoglio, 792 F.3d 768, 776 (7th Cir. 2015)).

B.  The Plaintiff's Allegations

The proposed amended complaint sues the same defendants and contains the same allegations as the original complaint. Dkt. No. 13-1; Dkt. No. 1.[1] The court reiterates the plaintiff's allegations.

The plaintiff alleges that on April 11, 2018, Oshkosh Correctional Institution entered into a Memorandum of Understanding ("MOU") with UW-Platteville, "per policy DAI 309.55.05."[2] Dkt. No. 13-1 at ¶2. He says that on that same day, he filled out a form DOC-1117 (2017 version) for approval to enroll in the Bachelor of Science in Business Administration program at UW-Platteville, per policy DAI 309.00.26.[3] Id. The next day, Oshkosh allegedly approved the plaintiff's form for enrollment. Id. He states that he is using his

---

[1] The proposed amended complaint is double-spaced and contains numbered paragraphs, while the original complaint is single-spaced and does not contain numbered paragraphs. The plaintiff references Wisconsin Department of Corrections, Division of Adult Institution policies in the proposed amended complaint and he includes the text of the referenced policies; the original complaint did not include the text of the referenced policies.

[2] According to the plaintiff, Wisconsin Department of Corrections, Division of Adult Institutions policy 309.55.05 part I(B) states: "The DOC shall establish MOUs or other legally binding contracts with accredited programs."

[3] According to the plaintiff, this policy states: "The Division of Adult Institutions shall maintain a process to screen and approve correspondence courses to assist inmates in furthering their education and personal enrichment."

Veterans Affairs "Post 9/11 G.I. Bill" Education Benefits to cover the full costs of his classes. Id.

The plaintiff alleges that on May 2, 2019, he enrolled in five classes for a twelve-month term ending May 1, 2020. Id. at ¶3. He says that he had to drop a class after defendant Heidi Dorner, the education director, denied him access to the computer lab to complete the required course work. Id. In August 2019, Dorner and defendant Paul Neyhard, the test proctor, allegedly forced the plaintiff to sign new DOC-1117 approval forms (2019 version) for each of his remaining four classes. Id. (The plaintiff says he completed the four remaining classes in March 2020, with a GPA of 2.5. Id.) He alleges that Dorner and defendant Warden Cathy Jess told him that Oshkosh had changed its definition of "course" and was retroactively enforcing its new "policy" by requiring him to re-apply for approval to enroll in classes for which he had previously enrolled. Id. The plaintiff states, "It should be noted that the Memorandum of Understanding (MOU) sent to UW-Platteville was left enforced and that OSCI [Oshkosh] never contacted UW-Platteville to change my approval to enroll in classes or reissued a new MOU to reflect any changes in policy[]" and "the new (2019) forms DOC-1117 became void upon completion of their respective classes for which they were approved for." Id.

The plaintiff alleges that in May 2020, he enrolled in four classes from UW-Platteville using the original 2017 DOC-1117 form. Id. at ¶4. He says that in July 2020, he informed Neyhard that he had sent for his first exam from UW-Platteville and that Neyhard would need to proctor the exam. Id. at ¶5. The

plaintiff says that Neyhard subsequently told the plaintiff that he would not proctor the exams unless the plaintiff received approval from Dorner. Id. According to the plaintiff, he had received approval in April 2018. Id.

The plaintiff alleges that he filed an inmate complaint against Neyhard and Dorner, and that Neyard issued him a conduct report (#111743) in retaliation for filing the complaint. Id. at ¶6. The plaintiff states that the institution complaint examiner used the conduct report to negate the initial complaint he filed, and that he appealed the conduct report to the warden. Id. The plaintiff alleges that he filed another inmate complaint for the retaliatory conduct report, but that defendant Bubolz, who is the institution complaint examiner, dismissed the complaint because the conduct report appeal process had not completed. Id. Defendant Deputy Warden James Zanon subsequently upheld the conduct report and dismissed the complaint. Id. The plaintiff alleges that he appealed the dismissal of his inmate complaint to defendant Brad Hompe (the corrections complaint examiner) and the Office of the Secretary, both of whom dismissed the complaint. Id. The plaintiff alleges that he filed a third inmate complaint for the conduct report itself and that defendants Todd Gillingham (the institution complaint examiner), Jess (the reviewing authority), Hompe and Chris O'Donnell (Office of the Secretary) all dismissed the complaint, citing the conduct report. Id.

The plaintiff alleges that in December 2020, defendant Andrew Russell took over as exam proctor from Neyhard. Id. at ¶7. The plaintiff says that he informed Russell that he had incoming exams from UW-Platteville that needed

to be proctored and Russell ordered the plaintiff to fill out a new approval form for the classes in which he had been enrolled since May 2020. Id. at ¶8. According to the plaintiff, he complied with Russell's order, but Dorner denied the new forms stating they were incorrectly filled out. Id. The plaintiff alleges that "[a]s a result of this," Russell issued him a major conduct report (144465) for which the plaintiff received sixty days' segregation time. Id. At the hearing, the plaintiff's legal paperwork was allegedly withheld from him and defendants Emil Toney, Nikki Schwebke, Jennifer Vande Voort and C. Geesaman did not allow him to submit evidence, in violation of DOC policy. Id. at ¶9. The plaintiff alleges that he appealed the conduct report and defendant Zanon upheld the conduct report in its entirety. Id. The plaintiff says he filed a complaint (OSCI-2021-2500), but that Gillingham and O'Donnell and defendants Meisner and Davidson dismissed it. Id. at ¶10.

The plaintiff contends that Oshkosh and the DOC violated his "ex post facto" constitutional rights because the DOC-1117 (2017) is a legal document used to enroll him in classes at UW-Platteville, but Oshkosh changed the interpretation of the policy and the definition of "course" after the fact and is punishing him for using the DOC-1117 (2017) in April 2018. Id. at ¶12. The plaintiff claims that Oshkosh and the DOC violated: (1) his right to free speech because they are limiting his right to take post-secondary classes at his own expense by the use of force (60 days segregation); (2) his right to be free from double jeopardy because Conduct Reports #111741 and #144465 punish him for taking the same classes within the same term of enrollment at UW-

7

Platteville; (3) his right to be free from cruel and unusual punishment for being placed in segregation for taking approved college classes; and (4) his right to due process, as defined in DOC 303 because he was not allowed to submit evidence for consideration, question witnesses or see the evidence presented against him during his hearing on Conduct Report 144465. Id. at ¶¶13-16.

In his amended complaint, the plaintiff asks the court to address whether he has a "'property interest' in [his] post-secondary education once the government (OSCI) approves [him] to take classes from UW-Platteville via contract and [he has] purchased a class or classes of instruction (paid the tuition and fees) out of [his] private funds to pursue earning [his] approved degree, and the government (WI DOC; OSCI) reneges on that contract causing damages to myself[.]" Id. at ¶17. The plaintiff goes on to state that, "if [he] has a property interest in pursuing post-secondary education using [his] personal funds, is the government liable for damages caused by reneging on its contract it entered with [him]?" Id. at ¶18. According to the plaintiff, as a result of the actions of the DOC and Oshkosh, he was forced to fail the classes in which he had enrolled for the May 2, 2020 to May 1, 2021 term because the DOC and Oshkosh refused to administer the required exams for the four classes, which resulted in UW-Platteville placing the plaintiff on academic probation, the loss of eligibility to his Veterans Affairs "Post 9/11 G.I. Bill" Education Benefits and other damages. Id.

The plaintiff seeks injunctive relief and monetary damages. Id. at pp. 11-13.

In its order screening the original complaint, the court determined that the plaintiff cannot sue the DOC or Oshkosh because they are not persons subject to suit under §1983; the plaintiff does not have a constitutional right to pursue education while incarcerated; the defendants' alleged violation of prison rules, regulations or policies does not give rise to a constitutional violation; the plaintiff has not stated a retaliation claim against Russell based on issuance of a conduct report; the plaintiff has not stated a due process claim based on the disciplinary hearing from the conduct report; and the plaintiff has not stated a claim based on the defendants' decisions related to the inmate complaints he filed. Dkt. No. 8 at 6-10. The court *did* allow the plaintiff to proceed on his retaliation claim against Neyhard based on allegations that Neyhard issued him a conduct report in retaliation for an inmate complaint the plaintiff filed against Neyard and Dorner. Id. at 10. The court dismissed the remaining claims and defendants.

In his motion to amend, the plaintiff has not asked the court to reconsider its order dismissing the claims and defendants described in the preceding paragraph. Rather, he states that the court misunderstood the questions he wants the court to resolve--the question of "property rights" and the application of "liability rights." Dkt. No. 13. As explained in the screening order, the plaintiff does not have a constitutional right to education while incarcerated. Dkt. No. 8 at 9-10; see also Murdock v. Washington, 193 F.3d 510, 513 (7th Cir. 1999) (incarcerated individual had no liberty or property interest in attending class) (citing Sandin v. Conner, 515 U.S. 485-87 (1995);

9

Higgason v. Farley, 83 F3.d 807 (7th Cir. 1996); Garza v. Miller, 688 F.2d 480, 485 (7th Cir. 1982)). But the plaintiff asks whether he had a "property interest" in his education once Oshkosh approved him to take classes from UW-Platteville "via contract," he paid the tuition and fees out of his private funds to pursue earning his approved degree and the DOC/Oshkosh "renege[d] on that contract" causing damages. Dkt. No. 13-1 at 9.

If the plaintiff has a property interest in the tuition and fees he paid to UW-Platteville, the defendants' alleged conduct in violating policy by not letting him complete his classes would be "random and unauthorized," and not the result of constitutionally-infirm procedures. See Johnson v. Wallich, 578 F. App'x 601, 602 (7th Cir. 2014). When a state official's conduct is random and unauthorized, due process requires only that an adequate post-deprivation remedy exists. See, e.g., Zinermon v. Burch, 494 U.S. 113, 128-30 (1990); Hudson v. Palmer, 468 U.S. 517, 533 (1984); Leavell v. Ill. Dep't of Natural Resources, 600 F.3d 798, 805 (7th Cir. 2010). Adequate post-deprivation remedies exist under Wisconsin state law to resolve property disputes. See Johnson, 578 F. App'x at 602 (concluding that there is no Fourteenth Amendment due process claim for random and unauthorized deprivations of property because Wisconsin state law has "tort remedies" for damage or conversion of an incarcerated individual's personal property and "certiorari review" for property that has been wrongfully taken or detained while incarcerated). Assuming for the sake of argument that the plaintiff has a property interest in the tuition and fees he paid to UW-Platteville, he has not

stated a due process claim because Wisconsin has adequate post-deprivation remedies.

The court will deny as moot the plaintiff's motion to amend the complaint because he did not need the court's permission to do so. The court will order the clerk's office to docket the proposed amended complaint as the operative complaint and the court will order Neyhard to respond to the amended complaint. The plaintiff's only claim—his retaliation claim against Neyhard—remains the same. The court will dismiss all remaining claims and defendants.

## II. Conclusion

The court **DENIES AS MOOT** the plaintiff's motion for leave to file amended complaint. Dkt. No. 13.

The **ORDERS** that the Clerk of Court must docket the proposed amended complaint (dkt. no. 13-1) as the amended complaint.

The court **ORDERS** that the plaintiff may proceed on his retaliation claim against defendant Neyhard, as described in this order, and that all remaining claims and defendants are **DISMISSED**.

The court **ORDERS** that defendant Neyhard must respond to the amended complaint within ten days of the date of this order.

Dated in Milwaukee, Wisconsin this 7th day of March, 2023.

**BY THE COURT:**

**HON. PAMELA PEPPER**
**Chief United States District Judge**